STATE OF DELAWARE UPON THE INFORMATION OF ROBERT C. WHITE, ATTORNEY-GENERAL, vs. JOHN W. GREEN.

*Quo Warranto—Majority Opinion of Court—Dissenting Opinion by Grubb, J.*

Under the decision in *Knight & Kennedy vs. Ferris*, *6 Houston, 283,* the Superior Court sitting in Kent County cannot issue a writ of *quo warranto* to a person who, it is alleged, in the information of the Attorney-General. has usurped and assumed to act as a Levy Court Commissioner for Seaford Hundred, Sussex County.

*(October 27, 1897.)*

LORE, C. J., and GRUBB and PENNEWILL, J. J., sitting.

*R. C. White,* Attorney-General, and *John M. Richardson* for the State.

*Walter H. Hayes* and *Joseph L. Cahall* for defendant.

(Special appearance for the purpose of making a motion.)

Superior Court, Kent County, October Term, 1897.

RULE to show cause why a writ of *quo warranto* should not issue. Rule granted returnable October 27th, 1897.

The Attorney-General then filed the following information:

" The information of Robert C. White, Attorney-General of the State of Delaware, respectfully showeth and gives the Court here to understand and be informed, that one John W. Green, late of North West Fork Hundred in the county and State aforesaid, was, on the Tuesday next, after the first Monday in November, A. D. 1894, duly elected a Levy Court Commissioner for the Hundred of Seaford in and for Sussex County for the term of four years commencing on the first day of February, A. D. 1895, and ending on the thirty-first day of March, A. D. 1899; that on the first day of April A. D. 1897, the said John W. Green removed from the Hundred of Seaford, and ceased to be a. freeholder and resident of Seaford Hundred from thence thereafter, and the said office of Levy Court Commissioner for Seaford Hundred, then and thereby became vacated and remained vacated until the fifth day of August A. D., 1897; that on the said fifth

day of August A. D. 1897, Ebe W. Tunnell, Esq., Governor of
the said State, duly appointed and commissioned Willard H.
Handy to be Levy Court Commissioner for said Seaford Hundred
for and during the term from thence to the thirty-first day of
March A. D., 1899, next ensuing.   That the said John W. Green
does unlawfully and wrongfully and without color of right con-
tinue to usurp and hold the said office of Levy Court Commis-
sioner for Seaford Hundred, in the county aforesaid, contrary to
the provisions of the statute in such case made and provided, and
against the rights of the said Willard H. Handy.   Wherefore
your relator prays that a rule issue out of this Honorable Court
requiring the said John W. Green to appear on some convenient
day before this Honorable Court and show cause, if any he hath,
why he hath as aforesaid usurped and assumes to act as a Levy
Court Commissioner for Seaford Hundred aforesaid, and as in
duty bound your relator will ever pray, &c.''

*Mr. Hayes* moved that the rule be discharged and the infor-
mation quashed, on the ground that the Superior Court of Kent
County had no jurisdiction, the cause of action being local to
Sussex County.

*Knight & Kennedy vs. Ferris, 6 Houston, 320; Dunlap vs.
Stewart, 6 Hous., 359,* (the latter as to its being a civil action.)

*Mr. White* replied; citing the mandamus case of *Hastings vs
Henry, 2 Delaware Term Reporter, 39,* where he claimed the
same objection was raised, but was disregarded by the Court.

The Court held the case up until the afternoon session, and
then delivered the following decision:

· LORE, C. J:—After conference, a majority of the Court
think that the rule should be discharged.

There is but one reported case directly upon the point raised
in this case in this State.   That is the case of *Knight & Kennedy
vs. Ferris, 6 Hous., 283.*   Messrs. Bradford & Higgins, who rep-
resented the defendants in error, presented this point:   That the
court below sitting in Sussex County had jurisdiction to issue the
writ of mandamus against a public officer in New Castle County
and that it was so held in the court below, *6 Hous., 146.*

Chancellor Saulsbury, who in his opinion directly considered this point—no other opinion appearing in conflict with it—on page 314 of Sixth Houston, as appears by the report of the case, uses this language :

"In considering this case, I shall confine myself to two questions : First, had the Superior Court of this State, sitting in Sussex County, jurisdiction to award a writ of mandamus in this case." Thus the point was directly raised and passed upon by the Chancellor.

Then on page 328 of the same report he uses this language : "There were many causes of error assigned to the record and proceedings below. I have considered only two, and express no opinion with respect to the others." One of those points was whether or not this was a local action ; and the Chancellor there distinctly took the position that it was a local action, and on page 318 uses this emphatic language : "No one ever supposed, that a purely local action, or one arising in a particular county of the State, and which could not have arisen elsewhere, could be heard and determined by the court in another county although the process of the court, necessary and proper to be issued in the case might, in the language of the constitution, be issued out of the court in the county in which the suit or controversy was pending in either county into every county."

Judges Comegys and Wootten sat with the Chancellor. Judge Wootten delivered an opinion, but it does not antagonize in any way the opinion of the Chancellor ; it certainly is not inconsistent with the position taken by the Chancellor. Judge Comegys seems to have expressed no opinion. Therefore upon the face of the report, this seems to have been the opinion of the Court of Errors and Appeals.

This is the decision of the court of highest jurisdiction in this State. It may be true, as Judge Grubb has stated, that in Sussex County this question came up afterwards before the Superior Court, and that there Chief Justice Comegys—one of the Judges who sat above—expressed a different view, and the court were unanimously with him. That case, however, is not reported. In any event there seems to be conflict, and where conflict exists, one case being reported and the other not, one

case being in the Court of Errors and Appeals of the State, and the other in a subordinate court, a majority of this court think we ought to follow the ruling of the Court of Errors and Appeals until it shall be overruled by competent authority. Expressing no opinion whatever as to whether the action is local or not, yet as the court of highest jurisdiction has expressed an opinion that it is a local action, we think that opinion should prevail until it is otherwise determined.

In the case of *Hastings vs. Henry, 2 Hardesty, 39, (1 Marvel, 287)*, cited by the Attorney-General, this precise question was not passed upon in the opinion. That was a case where the action was brought in Sussex County against a registration officer of Sussex County, and as a matter of course the question was not properly before us, and any opinion thereon necessarily would have been *obiter dictum*.

GRUBB, J., (dissenting) :—I stated here this morning to Mr. Hayes, counsel in the case, in the main my objection to granting his motion, thinking that probably it would be withdrawn on the ground of what I considered sound policy for this court to pursue. That is, where the Superior Court has formerly made a decision upon a point which was fairly and unequivocally presented and fully argued on both sides of the question regularly raised before the court and then deliberately considered by the court and solemnly declared to be the law, by the Superior Court ; my position is that this Superior Court should not undertake to override or disregard its former decision. In other words, that it should stand by the time-honored and almost uniformly observed—in this State—doctrine and practice of *stare decisis;* that is, of adhering to a former decision of the court, when the question was formally raised before it, fully argued and deliberately considered and the law solemnly declared.

Therefore it is on that ground that I differ with my brethren mainly, because I do not want to see the new practice adopted, that this court as now constituted shall overrule, disregard and repudiate the former decisions of this court. To do so will leave not only the court itself in a state of uncertainty, but will leave the Bar, who have to advise their clients, and the people of the State who have to act, uncertain as to what the law of the State

may be; which is a very embarrassing situation and will prove very injurious to the interests of the people at large as well as very embarrassing to the Bar who have to advise them.

Suppose this Court to-day overrules the decision, which I will soon show was made by the Superior Court of Sussex County with Chief Justice Comegys presiding and Judge Houston and myself sitting with him, upon this very question—where will we stand? Sooner or later, those who sit here to-day will not sit here. Others will follow in the Superior Court, and suppose they should be of the opinion that the decision of the majority of this Court as expressed to-day is not so good as that expressed by the unanimous Court presided over by Chief Justice Comegys in Sussex County a few terms ago; then they will disregard the decision made to-day and the other one will prevail. In the meantime the Bar have advised their clients, and they and the public without advice who are intelligent enough to know our decision—and many of them are—will have acted to their mis-fortune solely upon the decision of to-day. It may be repudiated and the decision which we have just overruled to-day will be the law of the State, and then they will have been advising against what was really the law of the State as it turns out. Then an-other Court will come along, probably, after that and reverse what the Court following us have done. Then where will you be?

I have taken my position in Sussex County recently, where the same thing has been done, because I fear the consequences, and I shall take the same position to-day, and when I sit in New Castle County I shall take the same position there and announce my reasons for it, if the necessity arises, as I have a right to do. Then I will stop giving my reasons, but will continue to dissent as long as I am on the bench.

Now when a unanimous decision of this Court, which was undoubtedly made about five years ago in Sussex County—be-cause I was there and know it—is to be repudiated by a mere majority of this Court, the consequences will be serious. If the decision of the Superior Court of Sussex County upon this question is not right, we should nevertheless adhere to that de-cision and should go on and hear this case to-day, and then let it

be taken up to the Supreme Court, for when the Supreme Court decides it, it will then be binding upon the Superior Court. Then no uncertainty can arise and there can be no see-sawing of one court against another; the one repudiating the other, and another in turn re-establishing the repudiated decision.

The answer my brethren have made to this is that there has been as they allege a decision of the Court of Errors and Appeals upon this question, being the highest court in this State, and the opinion of Chancellor Saulsbury in the case of *Knight & Kennedy vs. Ferris in 6 Houston* has been cited to show this.  I think I know better what has been decided in that case than my two brethren on the bench, because I was there and they were not.  I was counsel in that case, and I know what questions were raised by the exceptions to the judgment below, because I am the man who raised them; Messrs. Bradford and Higgins, counsel for the defendant in error, did not.  It is true they anticipated that the question might be raised in my argument, and therefore it was in their printed argument.  As a matter of fact they never read their printed argument in the Court.  They put it in print but they never uttered it in open Court.  I know that as a fact.  But even if they had, they merely anticipated that I would do what I did not.  I appeared to make the effort to have the judgment reversed, and I made the effort successfully, and it was reversed by the Court of Errors and Appeals; Chancellor Saulsbury delivering his opinion in the case in my favor on a jurisdictional ground I did not raise, and Judge Wootten, who sat with him, delivering his opinion in my favor on the ground I did raise as to jurisdiction, viz : that the Superior Court could not take jurisdiction because the Legislature had placed exclusive and final jurisdiction in another tribunal

Judge Wootten in his opinion, which is published in the report of that case in *6 Houston*, decided it on the ground I put it on as a ground of exception to the judgment.  The Chancellor in his opinion put it on a ground which I did not present or urge either on the record or in my argument; and Messrs. Bradford and Higgins could not present an exception or make an argument for me, because they were not on my side, but on the opposite side, and they could not raise that question, because it takes

two sides to raise a question, and I did not argue it or present it and it was not raised.

So that the point I make first is, that in this case of *Knight & Kennedy vs. Ferris*, which my brethren have cited, I did not present that question or raise it; and unless I did, it could not be raised. Therefore it was not raised; and not having been raised, the Court could not have considered it in the Court of Errors and Appeals; for we have an invariable rule in the Court of Errors and Appeals that the Court will not consider and pass upon any ground that is not raised by the counsel representing the parties on one side or the other. So that if Chancellor Saulsbury did put it in his opinion and although the unanimous Court had adopted his opinion yet they would have had no right to put it on that ground and pass upon it, because I never raised that ground. That is my understanding of it. And if both of the other Judges in the Court of Errors and Appeals who sat with the Chancellor had separately written opinions and expressly concurred in every word of the opinion of Chancellor Saulsbury, each of them in the same language as in the opinion of Chancellor Saulsbury, it would not be the law of this State, because the question was not raised, was not presented to them, and therefore they had no right to pass upon it, and if they did, it would have been *obiter* and would not have been an adjudication of that question of law for this State and binding upon this Superior Court.

*Secondly*, in corroboration of what I say that that was Chancellor Saulsbury's individual opinion and not the opinion of either Judge Comegys or Judge Wootten, I cite Judge Wootten's own opinion as it appears in the report of this case of *Knight & Kennedy vs. Ferris*, in which he puts it on my ground, and not that of Chancellor Saulsbury, that the Superior Court sitting in Sussex County could not hear a mandamus case respecting an officer belonging to New Castle County. Judge Wootten, I say, put it on my ground, which was that the Legislature had fixed a tribunal for the case then in question, whose decision should be final and conclusive and should not be contested. I argued that that tribunal was the sole and exclusive tribunal and that therefore neither the Superior Court nor the Court of Errors and Appeals could consider it and take jurisdiction. Judge Wootten

having written a separate opinion and not having referred to
Chancellor Saulsbury's opinion, neither concurring with him nor
dissenting, it may be presumed that Judge Wootten was express-
ing his own grounds that he chose to put it on and be responsible
for, and was not allowing Chancellor Saulsbury, who wrote his
own opinion, to put words in his mouth or to put responsibility on
him that he did not expressly agree to incur.

Chief Justice Comegys in that case was overruled, he having
delivered the opinion below, and he dissented from the decision
above. Judge Houston's report of the case is perplexingly con-
fused, and also does not show that Chief Justice Comegys dis-
sented. Chief Justice Comegys, to my knowledge, did not con-
cur, and my recollection is that he did not stay in the court room
to hear the opinions read.

The question now before us here, came up in the Superior
Court in Sussex County, where application was made for a man-
damus in the case of *State of Delaware, ex. rel. Alex. E. Cloud,
et al., vs. The President and Council of Wilmington,* which re-
lated to the election of a municipal officer in Wilmington. The
counsel in the case opposing the mandamus took the ground that
is taken here to-day by our learned and able friend Mr. Hayes.
The opinion of the Chancellor in the case of *Knight & Kennedy
vs. Ferris,* was cited against granting the mandamus, and when
it was cited as the unanimous opinion of the Court in that case, I
stated to the Court and counsel in that case that it was not, but
that it was only the individual opinion of the Chancellor. Chief
Justice Comegys who had sat in the *Knight vs. Ferris* case both
in the court below and in the Court of Errors and Appeals, was
then presiding in the Superior Court in Sussex County and heard
me make that declaration, and he certainly knew better than my
brethren here, whether that was Chancellor Saulsbury's indi-
vidual opinion or not. Judge Houston sat in that case in Sussex
with Judge Comegys and myself. He was also the reporter who
sat in the Court of Errors and Appeals and actually reported the
case, and he certainly knew whether that was the Chancellor's
individual opinion or that of the whole Court. At the conclusion
of the argument in Sussex County, Chief Justice Comegys who
was one who sat in the case cited, Judge Houston, who was the

reporter who sat in the case and reported it, and myself, having been counsel in the case, had a conference, the result of which was that we considered that the opinion of Chancellor Saulsbury was not the unanimous opinion of the Court of Errors and Appeals upon that point, but was his individual opinion, and not binding upon the Superior Court. Therefore we three Judges sitting as the Superior Court of Sussex County, deliberately decided that that was not the opinion of the Court of Errors and Appeals from our own personal knowledge of that case, and that we would entertain the case from New Castle County; and we did entertain it and, after hearing the main argument, finally decided to discharge the application on other grounds than that of jurisdiction.

So, from what I have stated, the reasons for my dissent are: *First*, I know from the facts in the case of *Knight & Kennedy vs. Ferris*, that the opinion of the Chancellor in that case was his individual opinion and was not an adjudication of the question, and therefore is not binding upon me to-day as a decision of the Court of Errors and Appeals.

*Second*, That this question now before us has been adjudicated by the Superior Court sitting in Sussex County in the case I have mentioned.

Having established the fact that it was not an adjudication of the Court of Errors and Appeals and therefore not binding upon me and this Court; and second, that this Court has regularly adjudicated it, as it therefore had a right to do, this question is consequently *res adjudicata* and binding upon the Superior Court as a regular decision of this same Court. That being so, *stare decisis*, the doctrine which the old lawyers of this State have faithfully observed, ought not now to be departed from. I have looked through the decisions of our Courts—for such departure was before us and taken by the majority of this Court in Sussex County at the recent October Term, against my dissent—and I have failed, after a careful examination, to find a case in which the Superior Court in this State has ever overridden, disregarded or squarely repudiated, as is being done to-day, a former decision of the Superior Court made upon a question that was fairly and squarely raised by the facts and the law in the case before the

Court, after argument on both sides of the question and after a deliberate consideration and adjudication of the question so raised.

I find where Chief Justice Thomas Clayton questioned a case, and intimated that while the Court did not believe it to be the law, still it should be so considered by them, because it was a former decision of the Court, and it would not do for this Court to over-rule it, for that was the province of the Court above.

There may be such cases, but it is my opinion that it has only been done where the question was not squarely presented (as it is to-day in this case and as was done in Sussex at the last term) and fairly argued and considered. If we shall adopt the new policy of disregarding a former decision of the Court, instead of sending it to the Supreme Court, which is the final and conclusive arbiter, we may expect the mischievous consequences which I have referred to. It may have been done in some Courts, but I doubt whether we have done it in the State of Delaware. Our Courts have restricted a former decision to the facts belonging particularly to that former decision. They have distinguished a case where they could from the facts upon which the former decision was made; but I can not find that they have ever done as this Court—a majority of it—has done in Sussex and will do here to-day, where the question has been fairly raised whether we shall embark upon what I consider a very mischievous policy and one that will come back to plague the Bar and the Court—I do not believe that we can find a case of that kind in all the records of the reported cases of the State of Delaware.

Therefore I deem it my duty to dissent and call the attention of the Bar, as well as the members of the Court, to the serious nature of the consequences which will follow, solely with the object of preventing the adoption of that as a settled practice and policy of this Court. It is for that reason, and not merely because of the bearing it may have upon this case. The Court is very well satisfied to be relieved of the hearing of cases, and my personal inclination, aside from my sense of duty, would be to hear in Kent County only the cases that belong to this county and not those that could be heard in Sussex County. But believing the law in this State to be to-day as it was declared by the decision of Chief Justice Comegys, Judge Houston and my-

self—for I believe that is the law of this State until it is reversed and declared to be otherwise by the Supreme Court, the highest Court in this State—therefore it is, not with reference to this case alone but with reference to future cases and the consequences that will follow, that I have dissented and have expressed the grounds of my dissent.

PENNEWILL, J:—The Chief Justice has very clearly stated the position of a majority of the Court, but I think it only proper that I should very briefly give the reasons for the position I have taken.

I cannot agree with the contention that the position taken by the majority of the Court is not tenable because it would over-rule one of its own decisions. I contend rather that such position simply recognizes as a controlling authority a decision of the Court of Errors and Appeals, the highest court in the State.

That the question of jurisdiction was distinctly passed upon by the Court of Errors and Appeals in the case of *Kinght & Kennedy vs. Ferris, 6 Hous., 328*, there can be no doubt. There is no question in my mind that it was properly before the Court, and that the opinion delivered by the Chancellor on that point was not *obiter dictum*, because in the first place, the very first assignment of error, as reported, is in this language: "That the Court below had no such jurisdiction of the matter mentioned in the petition as would authorize it to afford or apply thereto any form or manner of specific remedy whatsoever;" and in the second place, the Chancellor says in the conclusion of his opinion, "there were many causes of error assigned to the record and proceedings below. I have considered two only and express no opinion with respect to the others."

The two questions that he considered were: (1) Had the Court jurisdiction, and (2) if it had, was the writ awarded, in substance proper and sufficient in law.

If the question of jurisdiction was not properly raised by the assignments of error in that case I am at a loss to understand, not only the language of the first assignment of error which I have quoted, but also the clear and positive language of the Chancellor to which I have referred. I feel that I must be

controlled by the case as reported, and I do not know of any safer rule to follow.

But it is insisted that the opinion of the Chancellor was not the opinion of the Court in that case. Such is not my conclusion. The Chancellor unquestionably delivered the judgment of the Court, and certainly there was no other opinion given in the case which conflicted in any way, or was in the least inconsistent, with the opinion of the Chancellor.

It is true that Judge Wootten delivered an opinion upon another ground, but in no particular did the opinion that he gave question the correctness or soundness of the opinion of the Chancellor. Chief Justice Comegys was the other member of the Court, but he said nothing, and therefore I must assume that he agreed with the Chancellor in the opinion he delivered.

Again, it has been urged that there has been a case decided in the Superior Court in Sussex County in which this question now before us was before the Court there, and in which Chief Justice Comegys, who sat in the case of *Knight & Kennedy vs. Ferris*, held a different position from that which Chancellor Saulsbury announced in the latter case.. But the case referred to in Sussex County is not reported, and while I have no doubt of the correctness of the statements made as to the facts, opinions and decision in that case, still I do not think it would be a wise rule or good policy, to accept an unreported case as an authority binding on us, particularly when there has been a prior decision of the same question in a higher court of the State diametrically opposed to the ruling and decision in the unreported case. I think it would be a bad precedent to establish.

Moreover, the case referred to in Sussex County was heard in the Superior Court, which is not our highest court, and if we should be controlled by the decision in that case we would be obliged to absolutely ignore, disregard and set at naught an adjudication of our highest court—the Court of Errors and Appeals.

Allusion has been made also to the case of *Hastings vs. Henry* reported in *2 Hardesty, 39.* But it will be observed that the cause of action in that case arose in Sussex County and was heard by the court in the same county. Any expression therefore as to the character of the action—whether it was local or tran-

sitory—was purely *obiter dictum*. And besides that question was not mentioned in the opinion delivered by the Court in that case.

I admit that there may be an exceptional case—as there was, according to my judgment, in Sussex County at the last term of this Court—in which the Superior Court might disregard a decision of the same Court, where it believed that the decision in the prior case was manifestly wrong; and that the Court might in such a case correct its own error. But I cannot take the extreme position that the Superior Court can reverse or disregard a decision of the Court of Errors and Appeals, or the Supreme Court, the highest court in the State.

That, I believe, would result in utter and absolute confusion as to what is the law of the State, and in that event I fear the Bar would indeed be unable to say, with any degree of certainty, what would be held to be the law in any case.

While expressing no opinion as to whether this would be regarded as a local or transitory action if the question were a new one, I base my opinion now upon this fact, that this question has been decided by the highest court of this State, and I must therefore regard this action as local and not transitory. There is certainly no reported case which holds that a decision of the Court of Errors and Appeals, or Supreme Court, may be overruled by a decision of the Superior Court.

LORE, C. J.:—Let the rule be discharged.